IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TANYA AVERETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 C 4606 |
| | ) | |
| CHICAGO PATROLMEN'S FEDERAL | ) | |
| CREDIT UNION; SCOTT ARNEY, | ) | |
| individually and as employee of | ) | |
| CHICAGO PATROLMEN'S FEDERAL | ) | |
| CREDIT UNION; BRYAN MILLIGAN, | ) | |
| individually and as employee of | ) | |
| CHICAGO PATROLMEN'S FEDERAL | ) | |
| CREDIT UNION; and LESLIE | ) | |
| ZALEWSKI, individually and as employee | ) | |
| of CHICAGO PATROLMEN'S | ) | |
| FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants' Motion to Dismiss Counts I and II of Plaintiff's

Complaint pursuant to Rule 12(b)(6). For the following reasons, the Motion is granted in

part and denied in part.

## BACKGROUND

Plaintiff Tanya Averett's Complaint includes two retaliation claims against

Defendants Chicago Patrolmen's Federal Credit Union ("CPFCU") and Scott Arney,

Bryan Milligan, and Leslie Zalewski (collectively, the "individual defendants"): one

under a federal statute, 12 U.S.C. § 1790b, providing whistleblower protection for credit

union employees; and one under Illinois' Whistleblower Act, 740 ILCS 174/1 *et seq.*

("the Illinois statute"). In her prayer for relief, Plaintiff seeks punitive damages as well

as other remedies.

The Illinois statute was enacted on August 18, 2003 with an effective date of January 1, 2004, and it prohibits "employers" from retaliating against "employees" "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15. It was passed against the backdrop of an Illinois common law retaliatory discharge cause of action allowing plaintiffs to recover against their employers if (1) the employee was discharged in retaliation for his or her activities; and (2) the discharge violated a clearly mandated public policy. *Chicago Commons Assoc. v. Hancock,* 804 N.E.2d 703, 705 (Ill. App. Ct. 2004). This action allowed for actions based on reports of improper activities to public officials. *See, e.g., Lanning v. Morris Mobile Meals, Inc.,* 720 N.E.2d 1128, 1130 (Ill. App. Ct. 1999).

While a full recitation of the facts in the Complaint is unnecessary, Plaintiff's Complaint includes the following allegations, which, as discussed below, the Court accepts as true for the purpose of addressing this motion. On or about September 29, 2003, Defendant CPFCU hired Plaintiff as a Financial Planning Coordinator. (R. 1-1, Compl. ¶ 13.) In March 2004, she was promoted to the position of Internal Auditor, tasked with reviewing CPFCU's policies and procedures to ensure compliance with National Credit Union Administration ("NCUA") rules and regulations, performing operational and financial audits, documenting and monitoring CPFCU internal control systems, and issuing reports and recommendations. (*Id.* ¶ 14.) In March 2005, Plaintiff was again promoted – to the position of manager over a CPFCU Compliance Officer – while also retaining her responsibilities as Internal Auditor. (*Id.* ¶15.)

2

During Plaintiff's time at CPFCU, it formed two internal committees to monitor the activities of CPFCU's staff and members, and to curtail abuses and violations: (1) the Supervisory Committee, comprised of five retired or active City of Chicago Police Officers; and (2) the Employee Suspicious Activity Committee ("ESAC"), comprised of the Internal Auditor, the Treasurer, and the Human Resources Director. (*Id.* ¶ 17.)

Around May 2005, Plaintiff discovered that Nick Gregor – the son of a Vice President at CPFCU external auditor Seldon Fox, Ltd. – was working as a CPFCU Loan Officer in violation of § 715.9 of the NCUA Rules and Regulations. (*Id.* ¶ 18-20.) Plaintiff brought this information to the attention of both the Supervisory Committee and Defendant Milligan, CPFCU's Chief Financial Officer. (*Id.* ¶ 21.) The Supervisory Committee held a meeting on the matter, during which Defendant Arney admitted to hiring Gregor and promoting him to the position of Loan Officer, and during which both Arney and Milligan insisted that Seldon Fox remain CPFCU's external auditor. (*Id.* ¶ 22.) Plaintiff also met with Supervisory Committee Chairman James Riordan about the matter, and Riordan in turn sent a letter to the Regional Director of the NCUA, requesting an official opinion on Seldon Fox's independence in light of Gregor's employment at CPFCU. (*Id.* ¶¶ 23-24.)

On or about August 16, 2005, the Supervisory Committee resolved that Milligan could no longer attend their meetings without a specific invitation. (*Id.* ¶ 28.) Plaintiff alleges on information and belief that the Supervisory Committee reached this decision in response to Milligan's attempts to influence the Supervisory Committee's selection of a new external auditor to replace Seldon Fox. (*Id.*) On or about November 5, 2005, Plaintiff expressed her concerns about CPFCU senior management's attendance at

3

Supervisory Committee meetings to NCUA examiner Cynthia Robinson. (*Id.* ¶ 30.) Robinson later visited CPFCU's offices to discuss this issue, concluding that it was improper for senior management to attend Supervisory Committee meetings of a federally insured credit union because it could undercut the independence of the Supervisory Committee. (*Id.* ¶ 37.)

On or about December 8, 2005, Defendant Milligan voiced vague concerns about Plaintiff's job performance to Plaintiff, and further told Plaintiff that it did not "make sense" for her to serve as CPFCU's contact with its new external auditor. (*Id.* ¶ 35.) In response, Plaintiff filed a "Suspicious Activity Report" regarding Milligan with CPFCU's Human Resources Department, which was directed by Defendant Zalewski. (*Id.* ¶ 36.) Plaintiff also eventually filed an official harassment complaint against Milligan, after which CPFCU suspended her employment. (*Id.* ¶ 42.) On or about January 25, 2006, Plaintiff spoke with NCUA representatives about her situation at CPFCU, explaining her belief that her interference with senior management's attempts to "sidestep" NCUA rules and regulations on external auditing firms instigated Milligan's harassment. (*Id.* ¶ 43.) Plaintiff was terminated from her employment at CPFCU on February 2, 2006. (*Id.* ¶ 44.)

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint, not the merits of the case. *Cler v. Illinois Educ. Ass'n,* 423 F.3d 726, 729 (7th Cir. 2005). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Centennial Mortgage, Inc.,* 398 F.3d 930, 933 (7th Cir. 2005)

(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The Court must assume the truth

of the facts alleged in the pleadings, construe the allegations liberally, and view them in

the light most favorable to the plaintiff.  *Centers*, 398 F.3d at 933. "Federal complaints

plead *claims* rather than facts."  *Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 714 (7th Cir.

2006) (emphasis in original).  As a result, "[i]t is enough to name the plaintiff and the

defendant, state the nature of the grievance, and give a few tidbits (such as the date) that

will let the defendant investigate," and a complaint need not "allege facts corresponding

to each aspect of a 'prima facie case'" to survive a motion to dismiss.  *Id.*  Except for in

cases involving the two claims addressed in Fed. R. Civ. P. 9(b), "[a]ny decision

declaring 'this complaint is deficient because it does not allege X' is a candidate for

summary reversal."  *Id.* at 715.

**ANALYSIS**

**I.      Punitive Damages**

        In their motion, Defendants challenge the availability of punitive damages under

both of the statutes on which Plaintiff relies.

        A.      **Section 1790b**

        In their opening memorandum, Defendants disputed the availability of punitive

damages under § 1790b given that they are not among the three remedies expressly

included in the statute, specifically: (1) reinstatement of an employee to his or her former

position; (2) compensatory damages; or (3) "other appropriate actions to remedy any past

discrimination."  12 U.S.C. § 1790b(c).  Later, in their reply brief, Defendants appear to

have abandoned this argument in deference to the opinion of the Northern District of

Ohio in *McNett v. Hardin Cmty. Fed. Credit Union,* No. 3:02 CV 7576, 2006 WL

2473000 at *2 (N.D. Ohio Aug. 24, 2006), which held that courts may award punitive

damages in § 1790b actions. (R. 26-1, Reply on Mot. to Dismiss at 4 n.1 (stating that the

CPFCU "does not reply to the Plaintiff's arguments on punitive damages" given

CPFCU's discovery of the *McNett* opinion after filing its opening brief).)

While the *McNett* opinion is persuasive rather than binding authority in the

Northern District of Illinois, the conclusion of the *McNett* court appears sound, and the

Court agrees that punitive damages are available under § 1790b. As the *McNett* court

noted, *McNett,* 2006 WL 2473000 at * 2, the Supreme Court has forcefully held that

"absent clear direction to the contrary by Congress, the federal courts have the power to

award any appropriate relief in a cognizable cause of action brought pursuant to a federal

statute." *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 70-71 (1992). Section

1790b does not provide any indication that Congress intended to exclude availability of

punitive damages. Indeed, the language of § 1790b(c)(3) – allowing district courts to

"take other appropriate actions to remedy any past discrimination" – suggests that

Congress intended to provide district courts with broad discretion to craft appropriate

remedies. Defendants' initial argument fails as a result, and their motion is denied with

regard to the availability of punitive damages under § 1790b.

B.      **The Illinois Statute**

6

Unlike § 1790b, the Illinois statute evinces legislative intent to proscribe punitive damages awards.[1]  The Illinois statute was enacted in 2004, and few courts have construed it since.  *See Jones v. Dew,* No. 06 C 3577, 2006 WL 3718053 at *3 (N.D. Ill. Dec. 13, 2006).  As a result, the Court must interpret its damages provision without the benefit of relevant precedent from the Illinois courts.

In ascertaining the meaning of an Illinois statute, the Court must apply the same rules of statutory construction that the Supreme Court of Illinois would use if faced with the same task.  *United States Fire Ins. Co. v. Barker Car Rental,* 132 F.3d 1153, 1156 (7th Cir. 1997).  We thus begin by examining the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law.  *J.S.A. v. M.H.,* -- N.E.2d --, No. 101697, 2007 WL 289829 at *7 (Ill. Feb. 1, 2007).  The Court must afford the statutory language its plain and ordinary meaning, and if the language is clear and unambiguous, the Court must apply the statute without further aids of statutory construction.  *Id.*

The Illinois statute's damages provision states that if an employer unlawfully retaliates against an employee in contravention of the provisions of the Illinois statute, the employee may bring a civil action against the employer:

> for ***all relief necessary to make the employee whole***, including but not limited to the following, as appropriate: (1) reinstatement with the same seniority status that the employee would have had, but for the violation; (2) back pay, with interest; and (3) compensation for any damages

---

[1]     This is not to say that the rule of *Franklin* necessarily applies to interpretation of the Illinois statute.  "A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction."  *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 422 (2003).

7

sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees.

740 ILCS 174/30 (emphasis added).

The Illinois statute thus provides only for recovery of the amount "necessary to make the employee whole." *Id.* The Illinois statute's inclusion of a section devoted exclusively to damages allowing only for "make whole" relief reveals the Illinois legislature's intent to exclude the availability of other types of damages for violation of the statute. *See, e.g., Mattis v. State Univs. Ret. Sys.,* 816 N.E. 2d 303, 314 (Ill. 2004) (as a matter of statutory construction, when a statute includes the things to which it refers, courts should consider omissions as exclusions). This contrasts sharply with § 1790b, which includes an open-ended list of possible remedies – including the broad "other appropriate actions" remedy in § 1790b(c)(3) – without a general damages provision defining the scope of damages available under the statute.

The plain meaning of "make whole" allows for compensation of loss to return the plaintiff to his former condition, but not for recovery of punitive damages. Illinois case law is consistent with this plain reading. *See, e.g., Hasler v. Industrial Comm'n,* 454 N.E.2d 307, 310 (Ill. 1983) (to "compensate" and to "make whole" are synonymous). Punitive damages are by definition damages that go beyond those necessary to compensate an aggrieved party for its losses. *See, e.g., Loitz v. Remington Arms Co.,* 563 N.E. 2d 397, 401 (Ill. 1990) (punitive damages "are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future"); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350 (1974) (distinguishing punitive damages and those "sufficient to compensate [a plaintiff] for actual injury"); *Black's Law Dictionary* (8th ed. 2004) (punitive damages are

"[d]amages awarded in addition to actual damages," where actual damages are "[a]n amount awarded to a complainant to compensate for a proven injury or loss"). As a result, punitive damages are not available under the Illinois statute, and Plaintiff may not pursue punitive damages in connection with her Illinois retaliation claim.

The damages provision of the Illinois statute thus allows for damages different from those permitted under the common law retaliatory discharge claim, which provided for punitive damages. *See, e.g., Cross v. City of Chi.,* 815 N.E.2d 956, 964 (Ill. App. Ct. 2004) (citing *Midgett v. Sackett-Chicago, Inc.,* 473 N.E.2d 1280, 1283 (Ill. 1984)). Courts should generally construe statutes as adopting the common law, unless (1) the statute includes "clear and specific" language showing that a change was intended; or (2) the statute preempts the common law cause of action because it constitutes "general and comprehensive legislation [that] specifically describes course of conduct, parties, things affected, limitations, and exceptions." *In re C.B.L.,* 723 N.E.2d 316, 318 (Ill. App. Ct. 1999) (internal quotation and citation omitted). While both conditions may well exist here,[2] as discussed above, the Illinois statute at a minimum clearly shows that the legislature intended to foreclose the availability of punitive damages to plaintiffs alleging retaliation for disclosing information to a government or law enforcement agency.

II.     **Individual Liability**

---

[2] Other courts have suggested that the Illinois statute preempts the common law retaliatory discharge claim. *See, e.g., Jones v. Dew,* 2006 WL 3718053 at *3. The Court declines to reach this issue, particularly insofar as such a conclusion could limit the ability of plaintiffs who disclosed relevant information to their employer – but not to a government or law enforcement agency – to pursue retaliation claims.

Defendants also challenge Plaintiff's ability to sue the individual defendants

under either § 1790b or the Illinois statute.

A.    **Section 1790b**

The individual defendants argue that they are not proper defendants under §

1790b.  Like the Illinois statute, § 1790b has received very little attention from the

courts.  As a result, while the issue has been raised with at least one court in the past,[3] the

parties have not cited any decisions analyzing whether credit union employees are proper

defendants under § 1790b, and the Court has not found any such decisions.  The Court

must once again turn to the language of the statute to determine the merit of Defendants'

claim.

The plain language of § 1790b shows that it provides a cause of action only

against insured credit unions and the NCUA, and not against individual defendants.

Section 1790b(a), outlining the conduct prohibited by the statute, regulates the conduct of

only two categories of actors – (1) insured credit unions; and (2) "the Administration,"

defined in 12 U.S.C. § 1752 as the NCUA.  The remedies section of the statute, §

1790b(c), then provides remedies directed only against "the credit union or the

Administration which committed the violation."  The statute clearly and unequivocally

---

[3] In *Garrett v. Langley Fed. Credit Union,* 121 F. Supp. 2d 887, 897 (E.D. Va. 2000), the
plaintiffs initially argued that an officer and a board member of defendant credit union
were personally liable for any violation of § 1790b.  Without providing additional
explanation, the *Garrett* court noted that the plaintiffs had "waived" this argument during
the hearing on defendants' summary judgment motion.  *Id.*  While *Garrett* does not
support Defendants' position (as they suggest it does) given that the *Garrett* court did not
analyze the individual liability question, the outcome in *Garrett* suggests that the
plaintiffs there may have abandoned their argument in the face of statutory language fatal
to their initial position.

10

does not prohibit any conduct by, or provide any remedy against, individual employees

of insured credit unions or of the National Credit Union Administration.

B.      **The Illinois Statute**

Defendants next contend that the Illinois statute does not provide a cause of

action against the individual defendants.  Again, given the lack of guidance from

previous cases, the Court turns to the language of the statute.  The Illinois statute

prohibits retaliation against employees by "an employer," 740 ILCS 174/15, which is

defined in the statute as "an individual, sole proprietorship, partnership, firm,

corporation, association, and any other entity that has one or more employees in this

State, except that 'employer' does not include any governmental entity."  740 ILCS

174/5.  Plaintiff argues that inclusion of "an individual" in this list provides Plaintiff with

a cause of action against CPFCU employees.

The Illinois statute does not provide a cause of action against the individual

defendants.  First, the "that has one or more employees in this State" language in the

statute relates back to the other specifically enumerated types of employers, meaning that

only those individuals who have one or more employees in Illinois are "employers" for

purposes of the statute.  The structure of the statute supports this conclusion.  The statute

provides an "employee" – defined as one "who is employed . . . by an employer," 740

ILCS 174/5 – with a cause of action against the employer.  740 ILCS 174/30.  Plaintiff is

employed by CPFCU, not by the individual defendants, and as a result, her action lies

against CPFCU.

Even if this interpretation involved an uncertain reading of the statute – leading

the Court to look to the Illinois courts' interpretation of the common law retaliatory

11

discharge claim for guidance, *In re C.B.L.,* 723 N.E.2d at 318 – the same outcome

results. Illinois courts have unequivocally stated that only employers – and not agents or

employees of the employer – can commit the tort of retaliatory discharge. *Buckner v.

Atlantic Plant Maint., Inc.,* 694 N.E. 2d 565, 569-70 (Ill. 1998). As a result, the Court

finds that Plaintiff also cannot state a claim against the individual defendants under the

Illinois statute, and the individual defendants are dismissed from Plaintiff's Complaint.


### III.     Sufficiency of Allegations

Defendants also argue that Plaintiff has failed to (1) identify the specific statute,

regulation or rule that she believes CPFCU violated; and (2) allege that Plaintiff

disclosed information to the NCUA or another government agency as purportedly

required by both § 1790b and the Illinois statute. As explained above, Plaintiff need not

allege facts corresponding to each element of a prima facie case to survive a motion to

dismiss. Despite the Seventh Circuit's warning to the contrary, *see Kolupa,* 438 F.3d at

714, Defendants here ask the Court to find Plaintiff's complaint deficient for failure to

include specific allegations. The Court declines Defendants' request.

With regard to Defendants' first argument, Plaintiff is not obligated to identify the

specific statute, regulation, or rule that Defendant purportedly violated. Plaintiff

provided Defendant with the underlying factual basis of her claim, which is sufficient to

allow Defendants to investigate. As to Defendants' second argument, the Court need not

reach the parties' legal dispute regarding whether the relevant statutes require direct

disclosure to a government agency, because the argument fails either way. Not only is it

improperly based on Plaintiff's alleged failure to plead an element, but it is factually

12

baseless given that Plaintiff has alleged that she personally disclosed concerns to NCUA

personnel on two separate occasions. (R. 1-1, Compl. ¶¶ 30, 43.) Plaintiff has provided

the Defendants with facts sufficient to allow for investigation of her claim, and

Defendants have not shown that Plaintiff is incapable of proving a set of facts consistent

with her Complaint that would entitle her to relief. As a result, this portion of

Defendants' motion is denied.

## CONCLUSION

Defendants' Motion to Dismiss is granted in part and denied in part. The Motion

is granted to the extent that it asks the Court to (1) strike Plaintiff's request for punitive

damages under Illinois' Whistleblower Act, 740 ILCS 174/1 *et seq.*; and (2) dismiss

Scott Arney, Bryan Milligan, and Leslie Zalewski as Defendants as to both Count I and

Count II of the Complaint. The Motion is denied in all other respects. Plaintiff may

proceed against the Chicago Patrolmen's Federal Credit Union on Count I and Count II,

and her Complaint may seek punitive damages pursuant to 12 U.S.C. § 1790b.


Dated: March 27, 2007                    ENTERED


_____
AMY J. ST. EVE
United States District Judge


13